IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| RICHARD YOUNG, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | Civil Action No.06-160 |
| JEFFREY BEARD, Secretary of Corrections; ) | |
| JOHN S. SHAFFER, Executive Deputy Secretary; ) | |
| WILLIAM STICKMAN, Deputy Secretary; ) | |
| RAYMOND SOBINA, Supervisory Superintendent/) | Judge Joy Flowers Conti/ |
| Western Region; ALAN B. FOGEL, Bureau of ) | Magistrate Judge Amy Reynolds Hay |
| Health Care & Food Services Director; HARRY ) | |
| WILSON, Superintendent at S.C.I. Fayette; ) | |
| ROBERT TRETINIK, Corrections Health Care ) | |
| Administrator at S.C.I. Fayette; MICHAEL ) | |
| SCRIBNER, Food Services Manager II at S.C.I. ) | |
| Fayette; TOM MORAN, Food Services Super- ) | |
| visor at S.C.I. Fayette; DAVIS SWEITZER, Food ) | |
| Services Supervisor at S.C.I. Fayette; MICHAEL ) | |
| HERBIK, D.O. at S.C.I. Fayette; ADAM ) | |
| EBELMAN, State Medical Director for S.C.I. ) | |
| Fayette; and PRISON HEALTH SERVICES, INC., ) | |
| for S.C.I. Fayette, ) | |
| ) | |
| Defendants. ) | |
| ) | Re: Dkt. Nos. [54] & [64] |

REPORT AND RECOMMENDATION

RECOMMENDATION

It is respectfully recommended that motions for summary judgment be granted.

REPORT

Richard Young ("Plaintiff"), a state prisoner, has brought another civil rights action.[1] He is a Type II diabetic. Dkt. [51] at 1, ¶ 1. The complaint alleges that Defendants Dr. Michael Herbik, Adam Ebelman and Prison Health Services, Inc. (collectively "the Medical Defendants"), "conspire on a daily basis with each other making sure to it that this plaintiff does not receive a medically approved diet for his very serious medical needs." Dkt. [10] at 11 (upper case converted to correct case).[2] Plaintiff alleges that the Medical Defendants are responsible to order a medically necessary diabetic diet and that they refuse to do so. Plaintiff implies the reason for the conspiracy is that the Medical Defendants somehow benefit financially from their denial of a medically necessary diet and treatment. Dkt. [10] at 12 ("these 3 defendants could care less about treating this Plaintiff[']s very serious medical needs with a properly ordered medical diet. Instead these are the very type of defendants that are financially rewarded for denying this Plaintiff a medically approved diet.").

Plaintiff alleges that all of the other ten defendants (collectively, "the DOC defendants") have all conspired together to deny Plaintiff his necessary diabetic diet and they conspire together to provide him with the same diet as all other inmates in general population receive and that this diet poses health risks for him as a diabetic. Dkt. [10] at 8 to 10; Dkt. [74] at 1.

Plaintiff contends that the foregoing violates his Eighth Amendment rights.

---

[1] In Young v. Beard, No. 04-407 (W.D. Pa.), Plaintiff brought a substantially similar suit, alleging denial of a medically necessary cardiac/diabetic diet. No. 04-407 concerned conditions at SCI-Pittsburgh which was the prison Plaintiff was housed in immediately before being transferred to SCI-Fayette, which is where the events giving rise to the case at bar arose. The 04-407 case is currently pending.

[2] Throughout his complaint and other documents, Plaintiff typed in all capital letters. When the Court quotes from these documents, it will convert the case to the correct case hereinafter without any further notation of such.

Because the summary judgment record shows no genuine factual dispute that Plaintiff failed to exhaust his administrative remedies, summary judgment should be granted to all of the Defendants except Defendant Moran, because Plaintiff did exhaust as to him. In the alternative, because the summary judgment record shows no genuine dispute over either the subjective or objective prong of Plaintiff's Eighth Amendment claim, summary judgment should be entered in favor of all of the defendants (including Defendant Moran) on this ground.

**Standard of Review -Summary Judgment**

Summary judgment may be granted against a party who fails to adduce facts sufficient to establish the existence of any element essential to that party's case, and for which that party will bear the burden of proof at trial. Celotex Corp. v. Catrett, 477 U.S. 317 (1986). The moving party bears the initial burden to show or point out why there is no genuine issue of material fact. Walters ex rel. Walters v. General Motors Corp., 209 F.Supp.2d 481, 484 (W.D. Pa. 2002). The manner of carrying this initial burden varies depending on whether the moving party or the non-moving party bears the burden of proof at trial with respect to the legal issue. Fitzpatrick v. City of Atlanta, 2 F.3d 1112, 1115 (11th Cir. 1993)("The nature of this responsibility varies, however, depending on whether the legal issues, as to which the facts in question pertain, are ones on which the movant or the non-movant would bear the burden of proof at trial."). Instantly, the exhaustion of administrative remedies, one of the affirmative defenses raised by the Moving Defendants, is an issue for which the Moving Defendants would bear the burden of proof. Ray v. Kertes, 285 F.3d 287, 295 (3d Cir. 2002). Hence,

> [w]hen the moving party has the burden of proof at trial, that party must show affirmatively the absence of a genuine issue of material fact: it "must support its motion with credible evidence ⋯ that would entitle it to a directed verdict if not controverted at trial." [*Celotex*] at 331 (Brennan, J., dissenting); *see also Chanel, Inc.*, 931 F.2d at 1477. In other words, the moving party must show that, on all the essential elements of its case on which it bears the burden of proof at trial, no

3

> reasonable jury could find for the nonmoving party. *See id.* at 1477. If the moving party makes such an affirmative showing, it is entitled to summary judgment unless the nonmoving party, in response, "come[s] forward with significant, probative evidence demonstrating the existence of a triable issue of fact." *Id.*; *see also* Fed.R.Civ.P. 56(e); *Celotex*, 477 U.S. at 331 (Brennan, J., dissenting).

U.S. v. Four Parcels of Real Property, 941 F.2d 1428, 1437 (11th Cir. 1991) (en banc).

In contrast,

> [w]hen the nonmoving party has the burden of proof at trial, the moving party is not required to "support its motion with affidavits or other similar material negating the opponent's claim," *Celotex*, 477 U.S. at 323, in order to discharge this "initial responsibility." Instead, the moving party simply may "'show[ ]'-that is, point[ ] out to the district court –- that there is an absence of evidence to support the nonmoving party's case." *Id.* at 324. Alternatively, the moving party may support its motion for summary judgment with affirmative evidence demonstrating that the nonmoving party will be unable to prove its case at trial. *Id.* at 331 (Brennan, J., dissenting). If the moving party shows the absence of a triable issue of fact by either method, the burden on summary judgment shifts to the nonmoving party, who must show that a genuine issue remains for trial. Fed.R.Civ.P. 56(e); *Chanel, Inc. v. Italian Activewear, Inc.*, 931 F.2d 1472, 1477 (11th Cir.1991). If the nonmoving party fails to "make a sufficient showing on an essential element of her case with respect to which she has the burden of proof," *Celotex*, 477 U.S. at 323, the moving party is entitled to summary judgment.

Id., at 1437-38 (footnotes omitted). In either case, regardless of who bears the burden of proof at trial, the moving party must show no genuine dispute over a material fact.

"The substantive law governing the dispute will determine which facts are material, and only disputes over those facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." DeHart v. Horn, 390 F.3d 262, 267 (3d Cir. 2004)(internal quotations omitted). The evidence on summary judgment presents a genuine issue of fact only if the evidence is such that a reasonable jury could return a verdict for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986). "Where the record taken as a whole could not lead a reasonable trier of fact to find for the non-moving party, there is no genuine issue for trial." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587

(1986). The inquiry involves determining whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law. Brown v. Grabowski, 922 F.2d 1097, 1111 (3d Cir. 1990)(quoting Anderson, 477 U.S. at 251-52). If a court, having reviewed the evidence with this standard in mind, concludes that "the evidence is merely colorable . . . or is not significantly probative," then summary judgment may be granted. Anderson, 477 U.S. at 249-50. In reviewing the summary judgment evidence, the Court has no duty to search the record for triable issues; rather, it need rely only on those portions of the evidentiary record to which the nonmoving party directs its attention. Guarino v. Brookfield Township Trustees, 980 F.2d 399, 403 (6th Cir. 1992).

In deciding a motion for summary judgment, the judge's function is not to determine the truth of the matter, but rather to determine if there is a genuine issue for trial. Anderson, 477 U.S. at 249.

In short, the summary judgment motion is an evidence testing device to see if there is sufficient evidence to support a party's position with respect to an issue for which that party bears the burden of proof at trial so as to justify holding a trial.

**Discussion**

1. *Failure to Exhaust*

Both the Medical Defendants and the DOC Defendants (collectively, the "Moving Defendants") point out that there is no genuine material factual dispute over Plaintiff's failure to exhaust his administrative remedies.

The Prison Litigation Reform Act ("PLRA") requires that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative

5

remedies as are available are exhausted." 42 U.S.C. § 1997e(a). There is no dispute that this provision applies herein.

There is also no dispute that the available administrative remedy for Plaintiff is found in DC-ADM 804. Dkt. [65-2] at 2 to 22. That DOC policy sets up a three stage administrative remedy with an initial grievance filed to the grievance officer of the individual prison. If the response, called an "Initial Review Response" does not satisfy the prisoner, then the prisoner must appeal to the Superintendent/ Manager of the prison facility. If the Superintendent's response does not satisfy the prisoner, then the prisoner must appeal to the Secretary's Office of Inmate Grievances and Appeals ("SOIGA), who would issue a final decision. This is the last step in the process.

The Moving Defendants point to, *inter alia*, Grievance number 160307, Dkt. [53-2] at 2, and note that although Plaintiff filed an appeal to the Superintendent, Plaintiff failed to take the third step and file an appeal to the SOIGA. In addition, the Moving Defendants point to an affidavit from Dorina Varner, who works as the Assistant Chief Grievance Officer in the Grievance Review Office. As part of her duties, she is responsible for reviewing grievance records of appeals filed to the SOIGA. Dkt. [65-2] at 2 to 4. She noted that since Plaintiff arrived at SCI-Fayette, he has completed only one grievance to the third level and that was grievance number 92808, which was related to his sentence and had nothing to do with the issues raised in his complaint. Dkt. [65-2] at 4, ¶12. She further noted that at times Plaintiff was on grievance restriction, which is imposed on prisoners who file frivolous grievances, and the restriction permits the prisoner to file only one grievance every fifteen working days, id., at ¶¶9 to 11, which, by the court's count, works out to two grievances a month. Morever, Plaintiff's own evidence establishes that he was placed on grievance restriction only from March 31, 2004

6

until June 30, 2004. Dkt. [75-2] at 3. However, Plaintiff complains that he was being deprived of a diabetic diet from February 5, 2004 and ongoing until February 2, 2006, which is both before and after he was placed on grievance restriction. See Dkt. [10] at 3, ¶ IV.A., and see id at p. 15 (demonstrating Plaintiff signed the complaint on 2/2/06). The evidence pointed to by the Moving Defendants was sufficient to meet their initial summary judgment burden to point out why there is no genuine issue of material fact.

In response, Plaintiff asserted in an unsworn brief that he in fact "exhausted to final review the following grievances . . . at Numbers (77341), (77352), (77357), (78698), (78700), (and 80141)." Dkt. [75] at 1. However, he fails to supply the Court copies of all of these grievances. The only grievance forms he does supply to the Court are the following: No. 80141,[3]

---

[3] Dkt. [51] at 10; [75-2] at 2 (both of which are copies of the initial grievance, which is dated 3/26/2004); Dkt. [51] at 11; [75-2] at 3 (both of which are copies of the first level appeal to the Superintendent Neal Mechling which is dated 4/7/04)). See also Dkt. [75-2] at 4 to 5; Dkt. [51] at 13 to 14 (both of which purport to be an appeal to the SOIGA of the following grievances, Nos. 77341, 77352, 77357, 78698, 78700, and Grievance Number 80141, and both of which carry a date of 4/19/2004). Interestingly, if one compares the two documents, i.e., Dkt. [75-2] at 5 and Dkt. [51] at 14, which appear to be identical, they are, in fact, on closer inspection, **not** identical. The copy contained in Dkt. [51] at 14, has a blank space at the lower bottom left of the page where the "mailed on" date should be. The copy contained in Dkt. [75-2] at 5 has the date of the 20th written in. Plaintiff offers no explanation for this discrepancy between these two copies of what purport to be the same thing.
   Interestingly enough, Dorina Varner submitted a second affidavit in which she stated that the SOIGA never received the final appeal (either Dkt. [51] at 13 to 14 or Dkt. [75-2] at 4 to 5) prior to January 23, 200**8** when Plaintiff attached it to some other grievance appeal, i.e, the appeal of Grievance No. 160307. Moreover, she also attests that Plaintiff never filed to the second level, i.e., an appeal to the Superintendent. Dkt. [77-2] at 5, ¶ 17.
   Of course, for present purposes of resolving this summary judgment motion, the Court accepts Plaintiff's version and evidence as true. Sloan v. City of Pittsburgh, 110 Fed.Appx. 207, 208 (3d Cir. 2004)("even accepting all of Sloan's evidence as true and construing all the evidence in the light most favorable to her, as we must, in reviewing a motion for summary judgment. Fed.R.Civ.P. 56(c)."). However, as explained in the body's text immediately following this footnote, even accepting Plaintiff's evidence as true, it does not create a genuine factual dispute as to whether he exhausted his remedies.

No. 80599,[4] and No. 160307.[5]  Plaintiff also provides an initial review response dated November 20, 2006 but it does not contain a Grievance Number.  Dkt. [51] at 23; Dkt. [75-2] at 13.

The Court concludes that none of the evidence Plaintiff provides creates a genuine issue of material fact, indicating that he did in fact exhaust his claims by filing all three levels of the DOC grievance procedure.  This is because the only evidence he offers to establish that he exhausted his remedies as to claims raised in this lawsuit, is Grievance No. 80141 and Grievance No. 160307.  Both Grievance No. 80141 and Grievance No. 160307 raised concerns about Plaintiff not receiving a diabetic diet.[6]  However, Grievance No. 80141 named only one individual and that one individual was "Tom Morant."  Dkt. [51] at 10; [75-2] at 2.  Grievance No. 160307 in the first level named only one individual and that one was Dr. Jin, and in the second level named "R. Tretinik."  The general rule is that in order to properly exhaust, a prisoner must name in the initial grievance persons whom the prisoner has a complaint against and whom he eventually wishes to sue.  Spruill v. Gillis, 372 F.3d 218, 234 (3d Cir. 2004).  Here, Plaintiff did not name any of the Defendants, except Tom Moran, (which the court takes to be the same individual as "Tom Morant" named in the grievance) and Robert Tretnik, in the only

---

[4] Dkt. [51] at 12; Dkt. [75-2] at 9 (both of which are initial grievances and dated 8/7/2006).  The record does not appear to contain any copies of any second level or third level appeals for this grievance.

[5] Dkt. [51] at 15; Dkt. [75-2] at 10 (both of which are the initial grievance and are dated 8/7/2006 ); Dkt. [51] at 16; Dkt. [75-2] at 11 (both of which are the initial review response and dated 8/9/2006); Dkt. [51] at 17; Dkt. [75-2] at 12 (both of which are the appeal to the Superintendent and dated 8/21/06). While this grievance may concern Plaintiff's diabetic diet, it is noted neither the initial grievance nor the appeals therefrom name any individual other than Dr. Jin (who is not a defendant herein) and Robert Tretnik (who is a defendant herein).

[6] Grievance No. 80599 also appears to raise concerns about lack of a diabetic diet but Plaintiff does not provide any evidence that he filed either a second level or third level appeal as to this grievance. Hence, this grievance cannot serve to create a genuine issue of material fact with respect to his claims raised herein because exhaustion requires utilizing all three steps of the grievance procedure.  Jones v. Maher, 131 Fed.Appx. 813, 815 (3d Cir. 2005); Ahmed v. Sromovski, 103 F.Supp.2d 838, 843 (E.D.Pa. 2000).

8

grievances Plaintiff offers to the court which (1) concern his diabetic diet and (2) on which he offers evidence to show that he exhausted all three levels. Hence, accepting Plaintiff's version as true, i.e., that he, in fact, filed to the both the second and third levels on Grievance Nos. 80141 and 160307, the evidentiary record which Plaintiff points to establishes that Plaintiff has failed to exhaust with respect to all defendants, other than Moran and Tretnik, and hence, summary judgment should be entered in favor of all defendants other than Moran and Tretnik, based on Plaintiff's failure to exhaust. See, e.g., Spruill v. Gillis, 372 F.3d at 234; Williams v. Pennsylvania, Dep't of Corrections, 146 Fed.Appx. 554, 557 (3d Cir.2005) ("his [i.e., the prisoner's] failure to identify defendants Herbert, Street, or Smith in either of his two grievances, means that he failed to exhaust his administrative remedies in accordance with Pennsylvania's grievance process and the PLRA.").

Furthermore, although Plaintiff named R. Tretnik in the second level of Grievance No. 160307, such was insufficient to exhaust as to Defendant Tretnik because the second level grievance as well as the first level grievance were filed **after** Plaintiff had already initiated this suit. Grievance No. 160307 was filed on August 7, 2006. Dkt. [51] at 15. Plaintiff initiated this suit some six months earlier when he executed his complaint on February 2, 2006.

The rule is that one must exhaust his administrative remedies **before** filing suit. Dancy v. Collier, __ Fed.Appx. __, __, Slip Copy, 2008 WL 449732, *1 (3d Cir. Feb. 20, 2008)(Non-precedential)("A prisoner who challenges prison conditions must exhaust available administrative remedies **before** filing suit in federal court.")(emphasis added); Oriakhi v. U.S., 165 Fed.Appx. 991, 993 (3d Cir. 2006) ("Oriakhi's administrative remedies were not exhausted prior to the initiation of suit. The fact that he completed the administrative review process before the District Court reached the exhaustion question is of no consequence. Indeed, there appears to

9

be unanimous circuit court consensus that a prisoner may not fulfill the PLRA's exhaustion requirement by exhausting administrative remedies after the filing of the complaint in federal court."); Thompson v. Michigan Dept. of Corrections, 23 Fed.Appx. 486 (6th Cir. 2001). Having failed to exhaust his administrative remedies with respect to Defendant Tretnik prior to commencing this suit, summary judgment should be entered in favor of Defendant Tretnik.

Plaintiff also does offer some general argument in his brief that he has at "all times . . . tried to appeal all grievances to final review . . . but due to this prison[']s very clever attempts of tampering with this plaintiff[']s mail, this plaintiff has no way of ever knowing if this plaintiff's grievance ever even made it out of this prison." Dkt. [69] at 2. However, argument in a brief in opposition to a summary judgment motion does not qualify as evidence for purposes of summary judgment. Liszewski v. Moyer Packing Co., 252 Fed.Appx. 449, 450 (3d Cir. 2007)("legal arguments in briefs are not evidence")(citing Jersey Cent. Power & Light Co. v. Lacey Twp., 772 F.2d 1103, 1109-10 (3d Cir.1985) ); Baird v. Alameida, 407 F.Supp.2d 1134, 1139 (C.D. Cal. 2005)("It is well established that 'a party cannot manufacture a genuine issue of material fact merely by making assertions in its legal memoranda.'")(quoting S.A. Empresa De Viacao Aerea Rio Grandense v. Walter Kidde & Co., 690 F.2d 1235, 1238 (9th Cir.1982).

Moreover, Plaintiff's contentions, made in his unsworn brief, that he had no way to determine if his mail was sent out, are drawn into doubt by his own representation that he sent his final appeal grievance out via certified mail, which apparently could be tracked, and hence, it could be determined whether the missive ever reached its intended destination. Dkt. [75-2] at 5 ("And all of the contents are being mailed certified mail to your office, because I do need direct proof that I put your office on complete notice."). In addition, Plaintiff himself indicated that he can inferentially tell whether something was mailed out or not by checking his Inmate Monthly

10

Account Statement to show whether a piece of mail was mailed out or not, and, if mailed out, on which date it was mailed, by seeing a deduction from his account to pay for postage. Dkt. [75-2] at 6. Last, but not least, Plaintiff could tell if his third level appeal was sent out by the fact that either he received a response from the SOIGA or he did not receive such a response, and, if he did not receive any response, he has some duty of inquiry. Cf. Veloz v. New York, 339 F.Supp.2d 505, 516 (S.D.N.Y. 1999) ("plaintiff's allegation that these particular grievances were misplaced or destroyed by correctional officers ultimately does not relieve him of the requirement to appeal these claims to the next level once it became clear to him that a response to his initial filing was not forthcoming."), aff'd, 178 Fed. Appx. 39 (2nd Cir. 2006).

Perhaps most important is that Plaintiff points to only two grievances which both (1) concerned his diabetic diet and (2) for which he offered evidence to show that he filed to all three levels, i.e., Grievance Nos. 80141 and 160307. Plaintiff asserts that he did in fact file to the third level on these grievances, and the Court accepts this as true for purposes of resolving this summary judgment motion. Hence, Plaintiff's rather general argument that some times prison employees interfered with some of his attempts to exhaust simply is not relevant to the present case where the only Grievance which is relevant, i.e., No. 80141,[7] was, for purposes of resolving this summary judgment motion, deemed exhausted to the third level. Accordingly, for any or all of these reasons, Plaintiff's argument in his brief is simply insufficient to create a genuine issue of material fact to support a finding that he exhausted his remedies on his diabetic diet claim.

---

[7] Grievance No. 160307 is not relevant because it was indisputably filed after Plaintiff initiated this suit and hence not relevant for purposes of establishing exhaustion, which the PLRA requires to be accomplished prior to filing suit.

No reasonable jury could find, based on the foregoing, that Plaintiff exhausted his administrative remedies except with respect to Defendant Tom Moran.[8]

Nor has Plaintiff otherwise established a factual dispute with respect to whether he exhausted. Plaintiff included some letters to some of the defendants in his summary judgment responses. To the extent that Plaintiff intends to argue that these letters satisfied the PLRA exhaustion requirement, the Court is unpersuaded. The letters, addressed to various defendants and sent in November 2006, which Plaintiff includes in his exhibits, Dkt. [74-2] at 5 to 6; Dkt. [75-2] at 14, are **not** grievances and cannot substitute for the formal grievance procedure DOC has put in place. See, e.g., Liranza v. Naranjo, 76 Fed. Appx. 270, 273 (10th Cir. 2003) ("Giving notice of his claims by means other than the prison's available grievance process does not satisfy [the Prison Litigation Reform Act's] exhaustion requirement." (citation omitted)). Accordingly, all of the Moving Defendants (other than Moran) are entitled to summary judgment based on the fact that no reasonable jury could find that Plaintiff exhausted his administrative remedies.

*2. Eighth Amendment*

In the alternative, Defendants are entitled to summary judgment because they have established that there is no genuine factual dispute over Plaintiff's Eighth Amendment deliberate indifference claim. Plaintiff has filed this suit pursuant to 42 U.S.C. § 1983 in order to attempt to vindicate his Eighth Amendment rights. In order to

> make out a claim under Section 1983, a plaintiff must demonstrate that the conduct of which he is complaining has been committed under color of state or territorial law and that it operated to deny him a right or rights secured by the Constitution and laws of the United States. The plaintiff

---

[8] As explained below, Tom Moran would be entitled to summary judgment based upon Plaintiff's failure to adduce evidence against him as to the Eighth Amendment. The same would be true of Robert Tretnik even if we assumed (as we do not) that Grievance No. 160307 could be considered to establish exhaustion with respect to him, even though it was filed only after initiation of this suit.

> must also establish that it was the acts of the defendant which caused the constitutional deprivation.

Mosley v. Yaletsko, 275 F.Supp.2d 608, 613 (E.D.Pa. 2003)(citations omitted). See also Hamilton v. Leavy, 117 F.3d 742, 746 (3d Cir. 1997)( In order "to survive summary judgment on an Eighth Amendment claim asserted under 42 U.S.C. § 1983, a plaintiff is required to produce sufficient evidence of (1) a substantial risk of serious harm; (2) the defendants' deliberate indifference to that risk; and (3) causation."). Here, there is no genuine factual dispute over whether the Moving Defendants act under color of state law. Hence, the only issues are whether the Eighth Amendment was violated and whether such a violation was caused by the Moving Defendants.

The Supreme Court has explained that analysis of a violation of the Eighth Amendment involves a two pronged inquiry: (1) an objective inquiry into the qualitative nature of the harm suffered by the victim of the alleged punishment and (2) a "subjective inquiry" into the mind of the person inflicting the harm. See Wilson v. Seiter, 501 U.S. 294 (1991). The Court of Appeals for the Third Circuit has explained the objective element as requiring proof that "the deprivation was sufficiently serious to fall within the Eighth Amendment's zone of protections. . . . If not our inquiry is at an end." Fuentes v. Wagner, 206 F.3d 335, 344 (3d Cir. 2000). The Supreme Court has held in the medical context that "deliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain . . . proscribed by the Eighth Amendment." Estelle v. Gamble, 429 U.S. 97, 104 (1976)(internal quotations omitted). The Court explained the subjective prong of an Eighth Amendment "deliberate indifference" claim is met when a prison "official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists and he must also draw the inference." Farmer v. Brennan,

511 U.S. 825, 837 (1994). Plaintiff bears the burden to prove, by competent evidence, both the subjective and the objective components of the Eighth Amendment. Comstock v. McCrary, 273 F.3d 693, 703 (6th Cir. 2001); Newland v. Achute, 932 F.Supp. 529, 532 (S.D.N.Y., 1996); Pasha v. Barry, No. Civ. A. 96-466, 1996 WL 365408, at *1 (D.D.C. June 21, 1996).

Instantly, the Moving Defendants pointed out that although Plaintiff is a diabetic, he has adduced no evidence that the diet he is on, i.e., the "Heart Healthy"[9] diet given to the general population at SCI-Fayette is contraindicated or otherwise inadequate for diabetics generally or for Plaintiff in particular as would be required for him to carry his burden to show that he suffered an objectively serious deprivation. This was sufficient to carry their initial summary judgment burden in order to shift the burden to Plaintiff for him to come forward with evidence that would support his prima facie case. In fact, however, Plaintiff himself adduced evidence that his request to be placed on a special diet was "reviewed by both medical and food service staff. Both concur that the menu served on a general population main line is sufficient to meet your medical needs." Dkt. [51] at 26; Dkt. [75-2] at 16. Plaintiff also himself adduced evidence that

> . . . . The Department of Corrections (DOC) mainline menu [which is the one served to the general population at SCI-Fayette] is a healthy menu designed to meet the nutritional needs of the general population. Most inmates who previously were on a diabetic diet or a cardiac diet are able to maintain their health eating the foods on the mainline menu.
>
> According to Department of Corrections policy and procedures, only physicians and physician assistants can order medical diets. Diets based on documented medical need are generally approved . . . .
>
> Without a written diet order, Food Services cannot provide a therapeutic diet.

Dkt. [75-2] at 17 (letter from clinical dietitian to Plaintiff).

---

[9] Dkt. [74-2] at 3 ("SCI Fayette has a Heart Healthy Diet which has been approved by the BHCS' [i.e., Bureau Of Health Care Services].)

14

Notwithstanding this evidence, all of which supports entering summary judgment for the Moving Defendants, and none of which helps Plaintiff to carry his burden, Plaintiff tried to meet his burden to show his need for the special diet by pointing to medical blood tests – tests that were not performed until July 13, 2006, nearly a year and a half after he arrived at SCI-Fayette,[10] and six months after he filed this suit – to show that his glucose level was high. Dkt. [74-2] at 7. However, even if high, Plaintiff offers nothing more than pure speculation that the reason for this higher reading is a lack of a special diet. First, establishing a causal connection between Plaintiff's eating of the diet provided to the general population and his higher glucose readings would require expert medical testimony. See, e.g., Baird v. Alameida, 407 F.Supp.2d at 1141 ("In an attempt to show that the CDC's [i.e., the Prison Authorities'] failure to authorize therapeutic outpatient diets harmed him, Baird points to the fact that he was hospitalized twice while at Wasco and three times while at CMC (a total of five times over a period of roughly five years). Depo. at 44, 62-63. He has presented no medical evidence, however, that these hospitalizations resulted from his diet."); id. at 1142 ("Baird also testified in his deposition that he had developed diabetic myelopathy. Depo. at 83. Again, however, he presented no evidence that this resulted from any inadequacies in the "Health [sic, should be "Heart"] Healthy" diet or the CDC's failure to provide him with a therapeutic outpatient diet. There is simply no evidence that anything in the CDC's dietary policy was the cause of any harm Baird may have suffered."). This is all the more true, given that the Moving Defendants adduced evidence of Plaintiff's purchases at the commissary which do not appear to be very healthy[11] and which Plaintiff does not deny purchasing or eating, rather, Plaintiff argues that there are not very many healthy

---

[10] Dkt. [74] at 2 (noting Plaintiff has been at SCI -Fayette since February 5, 2004)

[11] Dkt. [53-2] at 4 to 7 (listing purchases between June 27, 2006 and August 3, 2006).

choices for him at the commissary.[12] Thus, the evidence Plaintiff points to, i.e., a higher blood glucose level on one occasion, does not establish a genuine issue of material fact that providing him the same diet as provided to the general population caused him any harm or otherwise constituted a deprivation of treatment as would be necessary to establish an objectively serious deprivation under the Eighth Amendment.

In addition, in an effort to meet his burden, Plaintiff provided menus of meals served to the general population at SCI-Fayette. Dkt. [74-2] at 12 to 17. Plaintiff asserts in his unsworn brief that these menus establish that they are not proper for diabetics. However, Plaintiff's mere belief that these menus are not adequate for diabetics is not sufficient to create a material factual dispute. See Visser v. Packer Engineering Assoc. Inc., 924 F.2d 655, 659 (7th Cir. 1991) (wherein the Court held that "The proper ground for excluding the affidavits is that witnesses who are not expert witnesses--and these affiants were not--are permitted to testify only from their personal knowledge. Fed.R.Evid. 602; *United States v. Giovannetti*, 919 F.2d 1223, 1226 (7th Cir. 1990)"); Ways v. City of Lincoln, 909 F.Supp. 1316, 1322 *(D. Neb. 1995)(commenting on the requirement of Rule 56(e) that the affidavit "show affirmatively that the affiant is competent to testify as to the matters stated therein", the court concluded that "[a]t a minimum this means that the affidavit must establish the competence of the affiant to testify about the subject matter of his or her affidavit."). Rather, in the context of this case, Plaintiff would need expert testimony to establish that the menus provided to the general population are contraindicated or inadequate to

---

[12] Plaintiff does not assert that his medical condition required that he purchase items from the commissary or that his medical condition required that he purchase the items that he did in fact purchase, such as Twix bars and Jolly rancher candy. See, e.g., Dkt. [53-2] at 5 to 6. In fact, the commissary list which Plaintiff himself provided, shows that the commissary did carry items such as sugar free candy, sugar free chocolate chip cookies, oatmeal, nuts, pouch tuna and pouch salmon and sugar free drinks, even if the majority of items were not so healthy. Dkt. [74-2] at 18.

16

meet the needs of diabetics generally or Plaintiff in particular and Plaintiff adduces no such expert testimony.

In this respect, this case is like Boring v. Kozakiewicz, 833 F.2d 468 (3d Cir. 1987), wherein the Court held that where the serious medical need, or, in effect, where the medical significance of the objective deprivation is not obvious, then expert medical testimony would be needed to establish a prisoner's case. In Boring, the pre-trial detainees argued that the Defendants were deliberately indifferent to their serious medical need for treatment of a scalp condition, a knee disorder and for treatment of migraine headaches which required a special diet to alleviate the headaches. The Appeals Court held that expert testimony was required to establish that these plaintiffs suffered from a serious medical need, and stated that "[a]s laymen, the jury would not be in a position to decide whether any of the conditions described by plaintiffs could be classified as 'serious.' In these circumstances, the district court properly required expert medical opinion[.]" Boring, 833 F.2d at 473. Here, Plaintiff, as a diabetic, did not need an expert to establish that diabetics suffer from serious medical needs. However, because it would not be obvious to a lay jury that the menu afforded to the general population did not meet the needs of diabetics and because Plaintiff himself is not qualified as an expert dietician or medical expert, and he has not otherwise adduced expert testimony that the menu is insufficient for diabetics generally or for him in particular, Plaintiff fails to carry his burden. This is especially true in the face of the evidence pointed to above, which Plaintiff himself adduced, that the diet fed to the general population is adequate to meet the needs of diabetics generally. Given the absence of any medical or expert evidence that Plaintiff is in need of a diet other than the one provided to the general population, there is no evidence to support the objective deprivation prong of the Eighth Amendment.

Moreover, not only has Plaintiff failed to adduce evidence of the objective prong, he has also failed to adduce evidence of the subjective prong. There is no evidence to establish that the medical defendants believed Plaintiff needed a special diet or that Plaintiff's supposed need for such a special diet would have been so obvious to a medical practitioner that failure to order one could foreseeably harm Plaintiff.

This is even more true for the DOC defendants, none of whom are medical doctors and all of whom must rely on the medical experts to determine whether a special diet for any particular prisoner is needed or not. The general rule is that where a prisoner is being treated by medical personnel, non medical prison officials cannot be deliberately indifferent for failing to intervene in the medical treatment and/or medical decisions. See, e.g., Durmer v. O'Carroll, 991 F.2d 64, 69 (3d Cir. 1993)("The only allegation against either of these two [prison official] defendants was that they failed to respond to letters Durmer sent to them explaining his predicament. Neither of these defendants, however, is a physician, and neither can be considered deliberately indifferent simply because they failed to respond directly to the medical complaints of a prisoner who was already being treated by the prison doctor.")(footnoted omitted); Thomas v. Zinkel, 155 F.Supp.2d 408, 413 (E.D. Pa. 2001)("Prison authorities who are not physicians cannot be considered deliberately indifferent simply because they failed to respond directly to the medical complaints of a prisoner who was already being treated by the prison doctor. Similarly, health care administrators cannot be found deliberately indifferent when an inmate is receiving care from a doctor.")(internal citations and quotations omitted). This rule makes sense because a non-physician layperson cannot be deliberately indifferent to a prisoner's medical needs when he knows that the prisoner is being seen by and treated by physicians, notwithstanding the prisoner's complaints about the physician's treatments, because a non-physician layperson has no expertise

whereby to judge the adequacy *vel non* of a physician's treatment or decisions. While the DOC Defendants may have known of Plaintiff's complaints about his diet, the DOC Defendants had no expertise by which to question the medical determination of the Medical Defendants that Plaintiff did not need a special diet. Plaintiff does not dispute that no medical practitioner ordered Plaintiff to receive a special diet, nor has Plaintiff presented any expert evidence that he did in fact need a diet different from the "heart healthy" diet served to the general population. Accordingly, summary judgment should be granted to the Moving Defendants on all of Plaintiff's claims based upon his failure to adduce evidence of the objective and/or subjective prong.

   3. *Conspiracy*

Moving Defendants pointed out that there is no evidence of a conspiracy, as Plaintiff contends existed, to deprive him of his Eighth Amendment rights. Dkt. [55] at 10 to 11; Dkt. [66] at 7. This was sufficient to shift the burden to Plaintiff who bears the burden of proof as to conspiracy. Simmons v. Justice, No. 1:99CV141-T, 2000 WL 33529637, at * 4 (W.D.N.C. Oct. 31, 2000)("One appellate court has clearly defined plaintiff's burden in alleging and presenting proof of conspiracy under Sections 1983 and 1985: [Plaintiff must show] a combination of two or more persons acting in concert to commit an unlawful act, or to commit a lawful act by unlawful means, the principal element of which is an agreement between the parties 'to inflict a wrong against or injury upon another,' and 'an overt act that results in damage.'")(citing Hampton v. Hanrahan, 600 F.2d 600, 621 (7th Cir. 1979), rev'd in part on other grounds, 446 U.S. 754 (1980)). Plaintiff has offered no evidence on each of the elements of conspiracy, especially evidence that the defendants committed an overt act which resulted in damage. Hence,

19

no reasonable jury could find for Plaintiff. Accordingly, Moving Defendants are entitled to summary judgment as to Plaintiff's conspiracy claims as well.

In accordance with the Magistrates Act, 28 U.S.C. § 636(b)(1)(B) & (C), and Local Rule 72.1.4 B, the plaintiff is permitted to file written objections by April 21, 2008 in accordance with the schedule established in the docket entry reflecting the filing of this Report and Recommendation. Failure to timely file objections may constitute waiver of any appellate rights.

Respectfully submitted,

*/s/ Amy Reynolds Hay*
United States Magistrate Judge

Dated: 4 April, 2008

cc: The Honorable Joy Flowers Conti
United States District Judge

Richard Young
EP-8117
SCI Greene
175 Progress Drive
Waynesburg, PA 15370

All counsel of record by Notice of Electronic Filing